**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

RCN TELECOM SERVICES, LLC; RCN
TELECOM SERVICES OF NEW YORK,
L.P.; RCN CAPITAL CORP.; RCN
TELECOM SERVICES OF PHILADELPHIA,
LLC; RCN TELECOM SERVICES OF
MASSACHUSETTS, LLC; STARPOWER
COMMUNICATIONS, LLC; RCN
MANAGEMENT CORPORATION; RCN
ISP, LLC; RCN DIGITAL SERVICES, LLC;
RCN NY LLC 1; RCN TELECOM
SERVICES (LEHIGH), LLC; RCN
TELECOM SERVICES OF ILLINOIS, LLC;
21ST CENTURY TELECOM SERVICES,
INC; and RCN CABLE TV OF CHICAGO,
INC.,

                                             *Plaintiffs*,

       – against –

BMG RIGHTS MANAGEMENT (US) LLC,

                                             *Defendant*.

Civil Action No. 16-cv-4417-PKC

---

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

STEPTOE & JOHNSON LLP

1114 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900

1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 429-3000

*Counsel for Defendant*

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND................................................................2

ARGUMENT .....................................................................................................................5

I.  THE LAW GOVERNING CONDUIT ISP LIABILITY FOR SECONDARY COPYRIGHT INFRINGEMENT..................................................................................5

II.  RCN'S COPYRIGHT DECLARATORY JUDGMENT CLAIMS ARE NOT RIPE FOR ADJUDICATION....................................................................................7

    A.  RCN's Complaint Does Not Present an Actual Case or Controversy over Which This Court Has Jurisdiction............................................................7

    B.  The Court Should Exercise Its Discretion Not to Hear RCN's Declaratory Judgment Complaint ..........................................................................12

III.  RCN'S DMCA AND COPYRIGHT ALLEGATIONS FAIL TO STATE A CLAIM.........................................................................................................15

    A.  RCN Fails to State a Claim to DMCA Safe-Harbor Protection............................15

    B.  RCN Fails to State a Claim of Non-Liability for Secondary Infringement ...........16

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&M Records v. Napster*,
  239 F.3d 1004 (9th Cir. 2001) ...................................................................................17, 18

*Aetna Life Insurance Co. v. Haworth*,
  300 U.S. 227 (1937)...............................................................................................................7

*Arista Records v. Lime Group*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)....................................................................................17

*Arista Records v. Usenet.com*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)....................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................................15

*BASF Corp. v. Symington*,
  50 F.3d 555 (8th Cir. 1995) ................................................................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................15, 18

*BMG Rights Management (US) LLC v. Cox Communications*,
  No. 14-cv-1611, 2016 WL 4224964 (E.D. Va. Aug. 8, 2016) ............................2, 3, 6, 16, 17

*BMG Rights Management (US) LLC v. Cox Communications*,
  149 F. Supp. 3d 634, 639 (E.D. Va. 2015) ......................................2, 6, 12, 13, 15, 16, 17, 18

*Bruce Winston Gem Corp. v. Harry Winston, Inc.*,
  No. 09-cv-7352 (JGK), 2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010) ............................9, 13

*Capitol Records v Escape Media Group*,
  No. 12-cv-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)..................................17

*Columbia Pictures Industries v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ...............................................................................................2

*Dow Jones & Co. v. Harrods*,
  237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003).........................7, 11

*Dow Jones & Co. v. Harrods*,
  346 F.3d 357 (2d Cir. 2003)..................................................................................................12

*Effie Film v. Murphy*,
  932 F. Supp. 2d 538 (S.D.N.Y. 2013).....................................................................................11

*Farmaceutisk Laboratorium Ferring A/S v. Solvay Pharmaceuticals*,
    No. 89-cv-1972-JOF, 1992 WL 421542 (N.D. Ga. Sept. 9, 1992)........................................10

*Gershwin Publishing Corp. v. Columbia Artists Management*,
    443 F.2d 1159 (2d Cir. 1971)........................................................................................6, 16

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
    735 F. Supp. 581 (S.D.N.Y. 1990).....................................................................................14

*In re Aimster Copyright Litigation*,
    334 F.3d 643 (7th Cir. 2003) ...............................................................................................5

*Klinger v. Conan Doyle Estate*,
    988 F. Supp. 2d 879 (N.D. Ill. 2013) ................................................................................11

*Luckett v. Bure*,
    290 F.3d 493 (2d Cir. 2002)................................................................................................7

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)................................................................................................7

*Mears v. Montgomery*,
    No. 02-cv-407 (MHD), 2013 WL 69221 (S.D.N.Y. Jan. 4, 2013), *aff'd* 566 F. App'x
    17 (2d Cir. 2014)..............................................................................................................10

*MedImmune v. Genentech*,
    549 U.S. 118 (2007).........................................................................................7, 8, 10, 11

*MGM Studios v. Grokster*,
    545 U.S. 913 (2005)........................................................................................................5, 6

*National Union Fire Insurance Co. v. International Wire Group*,
    No. 02-cv-10338 (SAS), 2003 WL 21277114 (S.D.N.Y. June 2, 2003) ..............................12

*Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management*,
    712 F.3d 705 (2d Cir. 2013)..............................................................................................15

*Rolex Watch U.S.A. v. PRL USA Holdings*,
    No. 12 Civ. 6006, 2015 WL 1909837 (S.D.N.Y. Apr. 27, 2015)...........................................13

*Sony Corp. of America v. Universal City Studios*,
    464 U.S. 417 (1984)......................................................................................................5–6

*Telebrands Corp. v. Exceptional Products*,
    No. 11-cv-2252, 2011 WL 6029402 (D.N.J. Dec. 5, 2011)...................................................11

*Texas v. United States*,
    523 U.S. 296 (1998).............................................................................................................9

*Veoh Networks v. UMG Recordings*,
    522 F. Supp. 2d 1265 (S.D. Cal. 2007)................................................................8–9, 11, 14

*Viacom International v. YouTube*,
    676 F.3d 19 (2d Cir. 2012)..............................................................................................17

## STATUTES

17 U.S.C. § 512..........................................................................................6, 10, 15–16

28 U.S.C. § 2201..............................................................................................4, 7

## INTRODUCTION

This litigation is an abuse of the Declaratory Judgment Act in which the Plaintiffs (collectively, "RCN") seek a sweeping judgment that would immunize Plaintiffs against all future claims of secondary liability for their subscribers' direct infringement of copyrights. RCN's declaratory judgment complaint contains no specific factual matter from which the Court can determine that RCN will not be liable for infringement in the future and runs afoul of the law governing internet service provider (ISP) liability for copyright infringement.

RCN seeks a declaration that it is not liable for its subscribers' infringement of copyrights owned by BMG—and by extension all copyrights—because it is a conduit internet service provider. But conduit ISPs enjoy no such blanket immunity from secondary liability for copyright infringement. Instead, ISPs' liability turns on a fact-specific inquiry into their knowledge of and contribution to instances of infringement, their ability to supervise and control that infringement, the financial benefit that they obtain by permitting their subscribers to use their network to infringe, and their termination of repeat infringers in appropriate circumstances.

RCN's generalized allegations thus cannot support its request for a far-reaching declaration of non-liability. Although RCN has amended its pleadings to reference a selection of BMG copyrights that RCN was told were being infringed, it has not (and cannot) address the fatal flaw in its declaratory-judgment complaint: The Court cannot determine that RCN *will not contribute* to future instances of infringement where RCN's liability depends on facts that are unknown and, indeed, cannot be known in advance. The lack of definite and concrete facts to frame the dispute not only deprives the Court of subject matter jurisdiction but makes this just the sort of case that the Court should exercise its discretion to dismiss.

RCN's attempt to sidestep this difficulty by alleging that conduit ISPs are immune to secondary liability for copyright infringement fails as a matter of law. Long-standing doctrines

of secondary liability make ISPs liable for acts of infringement if they know of and contribute to that infringement or if they obtain a direct financial benefit from that infringement while failing to exercise a right to supervise or control it.  Congress granted conduit ISPs such as RCN a "safe harbor" defense to this liability only if they terminate repeat infringers in appropriate circumstances.  RCN's First Amended Complaint contains no specific facts from which the Court can infer that it is not liable for infringement, and its bald assertion that it has blanket immunity is legally invalid.

## FACTUAL AND PROCEDURAL BACKGROUND

BMG owns, administers, and licenses copyrights in musical compositions.  Am. Compl. ¶ 36.  In recent years, an online file-sharing protocol known as BitTorrent has become a major channel for theft of copyrighted music and film.  BitTorrent allows internet users to share files directly between their computers, without the need for a middleman or centralized database. Am. Compl. ¶ 38; *see also Columbia Pictures Industries v. Fung*, 710 F.3d 1020, 1026–1028 (9th Cir. 2013) (describing how BitTorrent works); *see also BMG Rights Management (US) LLC v. Cox Communications*, No. 14-cv-1611, 2016 WL 4224964, at *1–2 (E.D. Va. Aug. 8, 2016); *BMG Rights Management (US) LLC v. Cox Communications*, 149 F. Supp. 3d 634, 639 (E.D. Va. 2015).  Those users are direct infringers of the copyrights in the content that they share.

Due to the enormous volume of infringement via BitTorrent, copyright holders and their agents send millions of infringement notices to ISPs such as RCN.  BMG retained third party Rightscorp to monitor file sharing of its songs online and send notices of infringement.  Am. Compl. ¶¶ 37–40, 51, ECF No. 45.  Rightscorp's software automatically generates and transmits notices of infringement by a particular user to the user's ISP.  Am. Compl. ¶¶ 39–40.  After identifying torrents that reflect BMG songs, Rightscorp uses a combination of human review and

computer programs such as AcoustID and Audible Magic to verify that the torrent does indeed

contain an exact copy of the BMG song at issue.  Rightscorp then monitors BitTorrent to identify

users sharing that torrent.

BitTorrent users can be identified on the internet only by their IP address, a unique string

of numbers that is assigned by their ISP.  Only the ISP knows the identity of the subscriber at a

particular IP address.  *BMG*, 2016 WL 4224964, at *5 n.8.  Therefore, having identified an

infringing user, Rightscorp sends the ISP a notice that the user at a particular IP address is

infringing a copyright—with all pertinent information in machine-readable XML code.  The

notice identifies the specific copyrighted song and the torrent in which it is being shared.  The

infringement notice requests that the ISP forward the notice to the infringing subscriber and

offers the *subscriber* the opportunity to settle the infringement for $20 to $30.  The notices do

not threaten the ISP with suit for copyright infringement, direct or secondary.  *See* Declaration of

Michael J. Allan (Decl. of M. Allan) Ex. 1 (sample Rightscorp infringement notice).

RCN is a conduit ISP.  It provides its subscribers with access to the internet and their IP

addresses.  Only RCN knows the IP address that corresponds to each subscriber and therefore it

acts as a necessary gatekeeper for copyright owners' complaints of infringement which are

identified only by IP address.  Am. Compl. ¶¶ 26–29.  On its website, RCN instructs copyright

owners to submit notifications of infringement by its subscribers to a dedicated electronic

mailbox, abuse@rcn.com, and promises "to the extent required by applicable law" to "disable

access to material that is alleged to be infringing."  *See* RCN, *DMCA Policy and Procedure*,

http://www.rcn.com/hub/about-rcn/policies-and-disclaimers/dmca-policy-and-procedure/.   RCN

acknowledges that, since at least 2012, it has received notices from Rightscorp that "allege that

RCN's subscribers have engaged in copyright infringement."  Am. Compl. ¶ 52.  Yet, the same

repeat infringers (identified by their IP addresses) have continued to infringe with apparent impunity even after RCN was notified of the infringement.

In April 2016, counsel for BMG sent a letter to RCN regarding the pervasive copyright infringement by its subscribers and proposed that the parties meet to discuss a settlement that would include a means of preventing or limiting future infringement and providing appropriate compensation to BMG.[1]  *See* Am. Compl. Ex. C, ECF No. 45-2.  The letter did not identify any specific BMG copyrights.  On May 20, 2016, counsel for RCN responded that RCN was in the process of evaluating the notices of infringement that it had received from Rightscorp and anticipated completing its review by June 17.  Decl. of M. Allan, ¶ 5.  Counsel for BMG responded to suggest that the parties set up a conference call to discuss the matter on June 9, 10, or 16.  Decl. of M. Allan, ¶ 7.  Rather than respond to BMG's letter, RCN filed this suit on June 13.  RCN has not filed suit against any of the other Rightscorp clients or other copyright holders that send notices of infringement.  Decl. of M. Allan, ¶ 9.

BMG sought leave to move to dismiss RCN's original Complaint on the ground that RCN failed to identify an actual case or controversy that would establish subject-matter jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See* Letter from M. Allan (Aug. 22, 2016), ECF No. 39.  At the Initial Conference held in this matter, the Court permitted RCN to amend its pleadings to address the arguments BMG raised in its letter.  *See* Order (Aug. 31, 2016), ECF No. 44.  RCN submitted its Amended Complaint on September 16, 2016, and BMG sought and was granted leave to move to dismiss.  *See* Letter from M. Allan (Sept. 27, 2016), ECF No. 52; Scheduling Order for Motion to Dismiss (Oct. 4, 2016), ECF No. 54.

---

[1] Notably, the letter was directed only to RCN Telecom Services, LLC and did not make reference to any of the other thirteen named plaintiffs.

RCN's Amended Complaint seeks a declaration that it is not liable for any past, current, or future infringement of BMG's copyrights by its subscribers because it is a conduit internet service provider.  The Complaint provides no details regarding RCN's handling of infringement notices, the actions it takes against infringing subscribers, or its policies and procedures for addressing copyright infringement by its subscribers.  Instead, RCN asks the Court to rule that it is not currently liable and will never be liable for copyright infringement on its network.  *See* Am. Compl. Prayer for Relief.  It also seeks a declaration that BMG is not entitled to any compensation or damages from RCN for any alleged infringement of BMG's copyrights.  *Id.*

## ARGUMENT

## I.  THE LAW GOVERNING CONDUIT ISP LIABILITY FOR SECONDARY COPYRIGHT INFRINGEMENT

Long-standing doctrines of "secondary" liability allow a copyright holder to sue not only those who commit infringement themselves (known as "direct" infringers) but also those who contribute to or profit from that infringement.  "Recognizing the impracticability or futility of a copyright owner's suing a multitude of individual infringers, . . . the law allows a copyright holder to sue a contributor to the infringement instead."  *In re Aimster Copyright Litigation*, 334 F.3d 643, 645 (7th Cir. 2003) (noting that "chasing individual consumers is time consuming and is a teaspoon solution to an ocean problem" (citation omitted)).  "When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being . . . secondary liability on a theory of contributory or vicarious infringement."  *MGM Studios v. Grokster*, 545 U.S. 913, 930–31 (2005).  "[V]icarious liability is imposed in virtually all areas of the law, and the concept of contributory infringement is merely a species of the broader problem of

identifying the circumstances in which it is just to hold one individual accountable for the actions of another." *Sony Corp. of America v. Universal City Studios*, 464 U.S. 417, 435 (1984).

There are two main doctrines of secondary copyright liability.  First, "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Publishing Corp. v. Columbia Artists Management*, 443 F.2d 1159, 1162 (2d Cir. 1971) (footnote omitted); *see also Grokster*, 545 U.S. at 930 (endorsing *Gershwin's* "doctrines of secondary liability" as "well established in the law" and applying them in the online context).  Second, one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930; *see also Gershwin*, 443 F.2d at 1162 ("[O]ne may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.").

Recognizing the risk that these doctrines pose to companies such as RCN, Congress provided a "safe harbor" defense to secondary liability in the Digital Millennium Copyright Act ("DMCA").  *See* 17 U.S.C. § 512(a).  However, this defense is not absolute.  Rather than provide conduit ISPs with blanket immunity, Congress required that conduit ISPs adopt and reasonably implement a policy for the termination of repeat infringers in appropriate circumstances before they may claim a safe harbor defense.  *See id.* § 512(i).

Applying these doctrines, the Eastern District of Virginia recently held Cox Communications liable for its subscribers' infringement of BMG's copyrights.  *See BMG Rights Management (US) LLC v. Cox Communications*, 149 F. Supp. 3d 634 (E.D. Va. 2015) (summary judgment); *BMG Rights Management (US) LLC v. Cox Communications*, No. 14-cv-1611, 2016 WL 4224964 (E.D. Va. Aug. 8, 2016) (post-trial motions).

## II.     RCN'S COPYRIGHT DECLARATORY JUDGMENT CLAIMS ARE NOT RIPE FOR ADJUDICATION

### A.     RCN's Complaint Does Not Present an Actual Case or Controversy over Which This Court Has Jurisdiction

RCN's Complaint seeks a sweeping declaration of non-liability for an indeterminate period based on events that have yet to occur.  This is not the sort of "actual controversy" over which district courts have jurisdiction under the Declaratory Judgment Act.  28 U.S.C. § 2201.  A dispute giving rise to a claim for declaratory relief must be "definite and concrete" and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune v. Genentech*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).  "[C]ircumscrib[ing] federal jurisdiction to real conflicts" . . . "preclude[s] the courts from gratuitously rendering advisory opinions with regard to events in dispute that have not matured to a point sufficiently concrete to demand immediate adjudication."  *Dow Jones & Co. v. Harrods*, 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002), *aff'd* 346 F.3d 357 (2d Cir. 2003).

Failure to establish an actual case or controversy deprives a court of subject-matter jurisdiction over a declaratory-judgment complaint.  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).   The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists.  *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002).  To determine its jurisdiction under Rule 12(b)(1), a court may consider evidence outside the pleadings.  *Makarova*, 201 F.3d at 113.

Here, RCN fails to allege an actual controversy that would support exercising jurisdiction over its declaratory judgment complaint.  Without describing its handling of a single

infringement notice, providing any details regarding its purported policy of terminating repeat

infringers, or identifying a single instance in which it terminated a repeat infringer, RCN requests

a sweeping declaratory judgment that would immunize it from liability for all infringement on its

network.  RCN's request for a vague, far-reaching ruling divorced from any specific facts is not

the proper subject of a declaratory judgment action.[2]

　　　　Ultimately, what RCN wants is a ruling that it is "not liable for *any damages* resulting

from *any instance of secondary copyright infringement* as a result of *any act of direct

infringement* committed by a subscriber of RCN's Internet service."  Am. Compl. Prayer for

Relief (emphasis added).  This is just the sort of advisory opinion the "actual controversy"

requirement is designed to avoid.  Courts have unsurprisingly refused to exercise jurisdiction

over similar claims.  For instance, the Southern District of California dismissed for lack of

jurisdiction an online service provider's request for rulings that it did not contribute to

infringement by subscribers who posted infringing content to its video-hosting site and that it

was entitled to DMCA safe-harbor protection from any past or future liability for infringement.

*See Veoh Networks v. UMG Recordings*, 522 F. Supp. 2d 1265, 1268–69 (S.D. Cal. 2007).  The

court explained that there was no concrete case or controversy; instead, the plaintiff sought a

---

[2] BMG's suggestion in an April 2016 letter that RCN could be secondarily liable for infringement is not enough, standing alone, to establish the "actual controversy" needed to exercise jurisdiction over this action.  BMG did not actually threaten to bring suit against RCN. Further, even if BMG's letter or pursuit of a litigation strategy against another ISP (Cox) made it reasonable for RCN to anticipate that BMG would bring suit in the future, such anticipation is neither necessary nor sufficient to establish an actual controversy.  *See Medimmune*, 549 U.S. at 122, 132 (rejecting the "reasonable apprehension of suit" test that was previously applied in this Circuit); *Vantage Trailers v. Beall Corp.*, 567 F.3d 745, 750–51 (5th Cir. 2009) (holding after *Medimmune* that "threats of legal action, alone, cannot create an actual controversy under the Declaratory Judgment Act" because a plaintiff "must still demonstrate that the controversy was sufficiently immediate and real").  As explained herein, RCN cannot establish a sufficiently immediate controversy, and instead seeks far-ranging relief untethered to any specific facts.

"blanket validation of the ongoing legality of the[] [plaintiff']s business model." *Id*. at 1269–70. That is exactly what RCN asks for here—blanket validation of its business model "divorced from a particular dispute over specific rights." *Id*. at 1270.  As in *Veoh*, RCN's Complaint would have the Court make declarations "as equally applicable against Defendant as to any other copyright holder." *Id*.  The "declaration's effect on each one of Defendant['s] [] copyrights would be uncertain enough; the effect on all other copyright holders not before the Court would be even more nebulous." *Id*.

RCN cannot save its Complaint by adding specific "exemplar" notices of infringement, as its requested relief sweeps far beyond the notices it attaches to the Complaint to every instance of infringement on its network—past, present, and future.

Crucially, the facts on which RCN's future liability turns cannot possibly be known in advance.  The Court cannot possibly know the content of future infringement notices, whether RCN will have knowledge of future infringements, what its future practices will be, and whether it will terminate repeat infringers in appropriate circumstances.  These sorts of contingencies render questions of infringement far too remote to justify declaratory relief.  *See, e.g.*, *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.");  *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09-cv-7352 (JGK), 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010) (dismissing declaratory-judgment action that "would necessarily entail advisory opinions into how far the plaintiffs can go in [their] future activities without infringing on the defendants' marks");  *Farmaceutisk Laboratorium Ferring A/S v. Solvay Pharmaceuticals*, No. 89-cv-1972-JOF, 1992 WL 421542, at *9 (N.D. Ga. Sept. 9, 1992) (holding that the issue of infringement by a new prescription drug was "too remote" because the

court "cannot be guaranteed that the product in question will not change between now and the time Solvay files an NDA or ultimately receives FDA approval to market its drug").

Further, while RCN may desire to immunize itself against liability for future infringement through the DMCA safe harbor for conduit ISPs, there is no factual record on which to assess that liability.  To be eligible for the DMCA safe harbor, a conduit ISP must have "adopted and reasonably implemented, and inform[ed] subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of . . . repeat infringers."  17 U.S.C. § 512(a), (i)(1)(A).  RCN provides no factual basis on which this Court could rule that RCN currently has reasonably implemented a policy of terminating repeat infringers—much less that it will have such a policy in the future.  Instead, it conclusorily asserts without any factual support that RCN "has adopted a DMCA repeat infringer policy, publishes that policy on its website, and in appropriate circumstances terminates subscribers under that policy."  Am. Compl. ¶¶ 90, 110.

Because it is impossible to know today whether RCN will terminate repeat infringers in appropriate circumstances tomorrow, this Court cannot offer RCN the "decree of a conclusive character" premised on non-hypothetical facts that is the touchstone of a proper declaratory judgment action.  *MedImmune*, 549 U.S. at 127; *see also Mears v. Montgomery*, No. 02-cv-407 (MHD), 2013 WL 69221, at *2 (S.D.N.Y. Jan. 4, 2013) ("Accordingly, '[f]or a declaratory judgment to issue, there must be a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'"), *aff'd* 566 F. App'x 17 (2d Cir. 2014).  It would be extraordinarily unfair to immunize RCN against the infringement of BMG's copyrights without regard for the facts that would be pertinent to an infringement action.  As the *Veoh* court observed, "given the highly factual and time-sensitive

- 10 -

findings required to satisfy [the safe harbor], would today's declaratory relief essentially give Plaintiff a 'free pass' to infringe rights in the future?"  *Veoh*, 522 F. Supp. 2d at 1270 n.3.

RCN's allegations differ significantly from the types of intellectual property disputes in which a court can offer useful and conclusive forward-looking relief.  Such cases generally involve a concrete dispute over specific, identifiable legal rights—for example, the scope of a patent or a license or the extent of an owner's rights in a particular creative work.  *See, e.g.*, *Medimmune*, 549 U.S. at 128 (plaintiff sought declaration that it was not required to pay royalties under a patent license agreement because the patent at issue was invalid and its drug did not infringe the patent); *Effie Film v. Murphy*, 932 F. Supp. 2d 538, 554–56 (S.D.N.Y. 2013) (plaintiff sought a declaration that the shooting script of its movie did not infringe on the defendant's play); *Klinger v. Conan Doyle Estate*, 988 F. Supp. 2d 879, 886–87 (N.D. Ill. 2013) (plaintiffs sought a ruling that particular elements from the Sherlock Holmes canon were in the public domain); *Telebrands Corp. v. Exceptional Products*, No. 11-cv-2252, 2011 WL 6029402, at *2 (D.N.J. Dec. 5, 2011) (holding that there was an actual controversy between two companies that marketed competing oral hygiene products for pets where, among other things, the parties had "potentially conflicting claims to certain, articulated intellectual properties").

That leaves past infringement, but declaratory judgment actions are not the proper vehicle to resolve questions of liability and damages for previously accrued harms.  *See Dow Jones*, 237 F. Supp. 2d at 426 ("[W]here the purported use of the DJA seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held that that application is not a warranted purpose of the DJA.").  The Act "is intended to operate prospectively." *National Union Fire Insurance Co. v. International Wire Group*, No. 02-cv-10338 (SAS), 2003 WL 21277114, at *5

(S.D.N.Y. June 2, 2003).  Backward-looking declaratory judgments do not provide the parties

with any clarity or relief looking forward but simply deny the natural plaintiff its choice of forum

if and when it decides to seek relief.

### B.     The Court Should Exercise Its Discretion Not to Hear RCN's Declaratory Judgment Complaint

Even if the Court were to find that it has subject matter jurisdiction, it should exercise its

discretion to dismiss this action.  *See Dow Jones & Co. v. Harrods*, 346 F.3d 357, 359 (2d Cir.

2003) ("Courts have consistently interpreted th[e] permissive language [of the Declaratory

Judgment Act] as a broad grant of discretion to district courts to refuse to exercise jurisdiction

over a declaratory action that they would otherwise be empowered to hear.").  Several factors are

relevant to this exercise of discretion:

> [i] whether the judgment will serve a useful purpose in clarifying or settling the
> legal issues involved; . . . [ii] whether a judgment would finalize the controversy
> and offer relief from uncertainty;  . . . [iii] whether the proposed remedy is being
> used merely for "procedural fencing" or a "race to res judicata"; [iv] whether the
> use of a declaratory judgment would increase friction between sovereign legal
> systems or improperly encroach on the domain of a state or foreign court; and [v]
> whether there is a better or more effective remedy.

*Id*. at 359–60.

To the extent that there is a dispute between the parties, a suit for declaratory relief is not

the proper vehicle to resolve it.  In order to "clarify[] or settl[e] the legal issues involved," the

Court will be required to engage in fact-intensive inquiries regarding RCN's knowledge of and

response to specific instances of copyright infringement.  *See BMG*, 149 F. Supp. 3d at 671–73

(denying summary judgment on the issue of an ISP's willful blindness where a jury could draw

competing inferences from the ISP's decision to block notices sent by Rightscorp on behalf of

BMG and on the question of whether a conduit ISP has a direct financial interest in its

subscribers' infringement).  Issues that may require resolution by a jury include whether RCN

acquired knowledge of the infringement by its subscribers through notices received from Rightscorp or other communications; whether RCN caused, induced, or materially contributed to that infringement; whether RCN had the ability to control that infringement; whether RCN profited from that infringement; and whether RCN terminated repeat infringers in appropriate circumstances as required under the DMCA's safe harbor provision.  *See id.* at 655–62, 671–73, 675–76.

Further, issuing a declaratory judgment may not provide RCN any relief from uncertainty.  RCN seeks a sweeping ruling that is completely divorced from changes in its future conduct or that of its subscribers—and from technological changes that may alter its relationship with its subscribers.  Ruling on the matters raised in RCN's Complaint will not finalize the controversy between the parties because RCN's future liability turns, among other things, on whether it knows of future infringement, contributes to that infringement, and terminates subscribers who repeatedly infringe BMG's copyrights going forward.  *See Rolex Watch U.S.A. v. PRL USA Holdings*, No. 12-cv-6006, 2015 WL 1909837, at *4 (S.D.N.Y. Apr. 27, 2015) (dismissing action for declaratory relief in a trademark dispute where "[a]ny declaratory judgment would risk making false assumptions about [the declaratory judgment plaintiff's] eventual course of action in commercializing the disputed products"); *Bruce Winston Gem Corp. v. Harry Winston*, No. 09-cv-7352 (JGK), 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010) (explaining that discretionary factors justified dismissing action seeking declaration of non-infringement with respect to future conduct because such a judgment would be "too abstract to serve a useful purpose and is unlikely to end uncertainty and controversy between the parties").

Rather than obtain definite and concrete relief, the purpose of RCN's suit is to pre-empt good faith negotiations between the parties regarding their relationship and RCN's obligations

upon receiving BMG notices and to deprive BMG of its choice of forum in the event it were to decide that litigation is appropriate.  RCN short-circuited BMG's attempts to negotiate in good faith and initiated litigation in its preferred venue.  Blessing this maneuver will "effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit" while creating disincentives to negotiate in good faith in future cases.  *BASF Corp. v. Symington*, 50 F.3d 555, 559 (8th Cir. 1995); *see also Great American Insurance v. Houston General Insurance*, 735 F. Supp. 581, 586 (S.D.N.Y. 1990) ("[T]he misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action.").  RCN's generalized allegations and the timing of its decision to file the Complaint both suggest that RCN filed this action to secure strategic advantages in any dispute with BMG.

Finally, RCN's allegations make clear that it is more concerned with anticipating defenses to liability than seeking a ruling that will clarify and guide the parties' conduct going forward.  *See Veoh*, 522 F. Supp. 2d at 1271 ("[U]sing the Declaratory Judgment Act to anticipate an affirmative defense is not ordinarily proper, and numerous courts have refused to grant declaratory relief to a party who has come to court only to assert an anticipatory defense.").  Here, RCN asks the Court to rule that it is entitled to the DMCA safe harbor and that its status as a conduit ISP immunizes it against infringement liability.  Allowing RCN to make these claims outside the context of a proper suit for infringement presents "particular problems" because the requested relief "would seemingly insulate Plaintiff's business model against all infringement claims, from every copyright holder, for all time."  *Id*.

### III.   RCN'S DMCA AND COPYRIGHT ALLEGATIONS FAIL TO STATE A CLAIM

RCN also fails to state claims that it is entitled to the DMCA safe harbor for conduit ISPs and that it is not liable for contributory or vicarious copyright infringement.

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is proper when a complaint's factual allegations are not substantial enough "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  RCN fails to meet that standard.

### A.   RCN Fails to State a Claim to DMCA Safe-Harbor Protection

RCN's claims both misconstrue the scope of the DMCA safe harbor and fail to plausibly establish that RCN is entitled to that protection.  First, the gravamen of RCN's allegations is that conduit internet service providers cannot be liable for secondary copyright infringement.  *See* Am. Compl. ¶ 79 ("Because RCN merely provides Internet connectivity to its subscribers, it does not contribute to any alleged infringing conduct by its customers.").  That is simply not the law. The DMCA creates a "safe harbor" defense to secondary copyright liability under certain conditions—it does not confer blanket immunity on conduit ISPs for infringement by their subscribers.

To be entitled to the safe harbor, conduit ISPs must adopt and reasonably implement a policy for the termination of repeat infringers in appropriate circumstances.  *See* 17 U.S.C.

- 15 -

§ 512(a), (i); *BMG*, 149 F. Supp. 3d at 653–62.  RCN alleges without factual support that it has a policy and in appropriate circumstances terminates subscribers under that policy.  Its allegations merely parrot the statutory language, and thus are precisely the sort of "formulaic recitation" found wanting in *Twombly* and *Iqbal*.  *Compare* Am. Compl. ¶¶ 90, 110 ("RCN has adopted a DMCA repeat infringer policy, publishes that policy on its website, and in appropriate circumstances terminates subscribers under that policy."), *with* 17 U.S.C. § 512(i)(1) ("The limitations on liability established by this section shall apply to a service provider only if the service provider – (A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers . . . .").

### B.     RCN Fails to State a Claim of Non-Liability for Secondary Infringement

Absent a DMCA safe harbor, long-standing doctrines of secondary liability make RCN liable for infringement if it "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct" (contributory infringement) or if it "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities" (vicarious liability).  *Gershwin*, 443 F.2d at 1162.  These doctrines of secondary liability apply equally to conduit ISPs as to other secondary infringers.  *BMG*, 2016 WL 4224964, at *9–14 (holding that there was "sufficient evidence for a reasonable jury to hold [the defendant ISP] responsible for the infringement of BMG's copyrights on its network"); *BMG*, 149 F. Supp. 3d at 670–76 (holding that conduit ISPs may be contributorily or vicariously liable for their subscribers' infringement).

As the *BMG v. Cox* court recognized, conduit ISPs may have knowledge of infringements based on notices from copyright holders and may be found willfully blind if they delete or ignore them. *See id.* at 671–73 (holding that a jury could find that an ISP's receipt of notice of infringement and willful blindness to infringement established its knowledge of infringing activity by subscribers); *see also Viacom International v. YouTube*, 676 F.3d 19, 35 (2d Cir. 2012) (explaining that the "willful blindness doctrine may be applied . . . to demonstrate knowledge or awareness of specific instances of infringement"). Conduit ISPs can make a material contribution to their subscribers' ongoing infringement because, among other things, their network provides the site and facilities for that infringement. *See BMG*, 2016 WL 4224964, at *14 ("There can be no question that the provision of high-speed internet service materially contributes to infringement via BitTorrent."). Conduit ISPs have the right and ability to control their subscribers' infringement because they have the power to deprive them of access to the network. *See BMG*, 149 F. Supp. 3d at 675 (holding that Cox had both the legal and practical ability to stop or limit infringement by its subscribers by suspending or terminating their accounts); *see also A&M Records v. Napster*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise."); *Capitol Records v Escape Media Group*, No. 12-cv-6646 (AJN), 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015) (holding that a secondary infringer has the right to control where secondary infringer has the contractual right to "terminate accounts" and "revoke [access] privileges"); *Arista Records v. Lime Group*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) (explaining that an entity's "right and ability to limit the use of its product for infringing purposes" by "denying access" supports vicarious liability); *Arista Records v. Usenet.com*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (holding that a right "to terminate,

- 17 -

suspend or restrict users' subscriptions, thereby limiting their access to uploading or downloading" constitutes control).  And ISPs benefit from infringement where "the availability of infringing material 'acts as a "draw" for customers.'"  *Napster*, 239 F.3d at 1023 (citations omitted); *see also BMG*, 149 F. Supp. 3d at 675–76.

RCN makes no attempt to address any of these factual questions on which its liability for infringement depends.  The Complaint contains none of the detailed "factual matter" relating to RCN's knowledge or handling of infringement notices, the competitive benefits of its tolerance of infringement on its network, or its termination of repeat infringers that would give a factfinder "plausible grounds to infer" that RCN is not secondarily liable for infringement by its subscribers. *See Twombly*, 550 U.S. at 555–56.  Instead, RCN simply recites the elements of the causes of action for contributory and vicarious copyright infringement and asserts that they are not met.  Without pleading any specific facts about its practices for handling notices of infringement and acting against infringing subscribers, RCN alleges that it "does not have knowledge of any of the alleged infringement committed by its subscribers," that it "lacks the ability to exert control" over the transmittal of copyrighted materials, and that it "does not authorize, direct or encourage its subscribers to engage in copyright infringement."  Am. Compl. ¶¶ 75, 78, 83.  This sort of "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## CONCLUSION

RCN's Complaint should be dismissed.  Its declaratory judgment claims are so indefinite and overbroad that they do not present an actual controversy over which this Court has jurisdiction.  In the alternative, even if the Court has jurisdiction, it should exercise its discretion to decline to exercise jurisdiction because RCN's fact-intensive claims are ill-suited for

declaratory relief.  Finally, RCN fails to set forth plausible claims of entitlement to the DMCA

safe harbor or non-liability for secondary infringement.


Dated: January 23, 2017                    Respectfully submitted,


                                           /s/ *Michael J. Allan*
                                           Michael J. Allan
                                           Jeffrey M. Theodore (admitted *pro hac vice*)
                                           STEPTOE & JOHNSON LLP
                                           1330 Connecticut Avenue, N.W.
                                           Washington, DC 20036
                                           Tel: (202) 429-3000
                                           Email: mallan@steptoe.com

                                           Evan Glassman
                                           STEPTOE & JOHNSON LLP
                                           1114 Avenue of the Americas
                                           New York, NY 10036
                                           Tel: (212) 506-3900
                                           Email: eglassman@steptoe.com

                                           *Counsel for Defendant*