UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| RCN Telecom Services, LLC, RCN Telecom Services of New York, L.P., RCN Capital Corp., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Massachusetts, LLC, Starpower Communications, LLC, RCN Management Corporation, RCN ISP, LLC, RCN Digital Services, LLC, RCN NY LLC 1, RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of Illinois, LLC, 21st Century Telecom Services, Inc., and RCN Cable TV of Chicago, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | No. 1:16-cv-4417-PKC<br><br>DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| BMG Rights Management (US) LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

I.    THE COURT HAS, AND SHOULD EXERCISE,
      JURISDICTION UNDER THE DECLARATORY
      JUDGMENT ACT ................................................................................... 2

      A.    The Declaratory Judgment Act exists for precisely this
            type of case. ................................................................................ 2

      B.    RCN alleges numerous facts which support the
            exercise of declaratory jurisdiction. ........................................ 7

      C.    BMG offers no colorable basis for discretionary
            dismissal. .................................................................................. 11

II.   RCN HAS STATED CLAIMS FOR A DECLARATORY
      JUDGMENT OF NO SECONDARY COPYRIGHT
      INFRINGEMENT ................................................................................ 13

      A.    RCN states a claim for a declaratory judgment of no
            contributory copyright infringement. ..................................... 14

      B.    RCN sufficiently pleads a claim for declaratory
            judgment of no vicarious copyright infringement. ................ 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................... 9

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ......................................................... 14

*Blank Prods., Inc. v. Warner/Chappell Music, Inc.*, 2013 WL 32806 (SDNY Jan. 3, 2013). 18, 19

*BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450
   (S.D.N.Y. July 15, 2016) ......................................................................................................... 18

*Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir. 1992) ........................................... 11

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) .................................................. 13

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394 (S.D.N.Y. 2002) ................................... 5

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971). .......... 19

*In re Charter Commc'ns*, 393 F.3d 771 (8th Cir. 2005) ......................................................... 15, 16

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 1:11-cv-5453,
   2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011) ............................................................................. 6

*Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir. 1991) ............................ 5

*Liberty Media Holdings, LLC v. Tabora*, 2012 WL 2711381,
   No. 1:12-cv-2234, 2012 WL 2711381 (S.D.N.Y. July 9, 2012) ......................................... 8, 18

*Livnat v. Lavi*, No. 1:96-cv-4967, 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998) ............................. 17

*Mears v. Montgomery*, No. 1:02-cv-407, 2013 WL 69221 (S.D.N.Y. Jan. 4, 2013) .................... 10

*MedImmune, Inc. v. Genentech, Inc*, 549 U.S. 118 (2007) ............................................................. 3

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .............................. 16

*Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107 (S.D.N.Y. 2016) .............. 11

*N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*,
   No. 1:04-cv-9949, 2005 WL 926969 (S.D.N.Y. April 19, 2005) .............................................. 5

*Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Int'l Wire Group, Inc.*,
   No. 1:02-cv-10338, 2003 WL 21277114 (S.D.N.Y. June 2, 2003) ........................................... 5

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ........................................... 19

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,*
    351 F.3d 1229 (D.C. Cir. 2003) ................................................................................................ 15

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.,*
    523 F. Supp. 2d 376 (S.D.N.Y. 2007) ...................................................................................... 6

*SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372 (Fed. Cir. 2007)................................ 6

*Sasson v. Hachette Filipacchi Presse,* No. 1:15-cv-194, 2016 WL 1599492
    (S.D.N.Y. April 20, 2016) ........................................................................................................ 3

*Seidman v. Chobani, LLC,* No. 1:14-cv-4050, 2016 WL 1271066 (S.D.N.Y. Mar. 29, 2016) ...... 6

*Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984) ............................... 17, 18

*TCA Television Corp. v. McCollum,* 839 F.3d 168 (2d Cir. 2016)................................................ 14

*U.S. Bank Nat'l Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.,*
    No. 1:12-cv-6811, 2014 WL 998358 (S.D.N.Y. Mar. 14, 2014)............................................ 12

*United States v. Doherty,* 786 F.2d 491 (2d Cir. 1986) ................................................................ 2

*Venugopal v. Sharadha Terry Prods., Ltd.,* No. 1:07-cv-484,
    2009 WL 1468462 (W.D.N.Y. May 22, 2009) ......................................................................... 6

*Veoh Networks, Inc. v. UMG Recordings, Inc.,* 522 F. Supp. 2d 1265 (S.D. Cal. 2007) ....... 10, 11

*Wolk v. Kodak Imaging Network, Inc.,* 840 F. Supp. 2d 724 (S.D.N.Y. 2012) ............................ 14

## <u>PRELIMINARY STATEMENT</u>

BMG is not entitled to dismissal under Rule 12(b)(1) or 12(b)(6), and its motion must be denied, because:

- BMG has expressly accused RCN, an internet service provider ("ISP"), of engaging in secondary copyright infringement through its ongoing treatment of BMG's notices of alleged copyright infringement by RCN's subscribers, thus creating a justiciable "case or controversy" under the Declaratory Judgment Act;

- a declaration resolving the parties' dispute would serve a useful purpose and relieve considerable uncertainty regarding the legality of RCN's ongoing conduct, thus rendering a discretionary dismissal inappropriate; and

- RCN has stated claims more than sufficient to sustain this action, through numerous detailed factual and legal contentions establishing that it cannot be liable to BMG for contributory or vicarious copyright infringement.

BMG does not dispute that, shortly before RCN filed this action, BMG expressly accused RCN of engaging in secondary copyright infringement, claimed that RCN is liable for up to $150,000 in damages for each of the potentially millions of infringed works at issue in this case, and demanded that RCN discuss a settlement to compensate BMG for the alleged infringement. BMG also does not dispute that RCN has identified thousands upon thousands of specific copyrights which BMG has accused RCN of infringing, through millions of automated notices of alleged copyright infringement—notices which RCN continues to receive at a rate of several hundred per day. These facts, which are both undisputed and indisputable, conclusively demonstrate that RCN's claims for declaratory relief present a justiciable "case or controversy."

Because BMG continues to send RCN hundreds of notices of alleged copyright infringement by RCN subscribers, RCN's purported liability to BMG increases with each day that BMG's charges of infringement remain unresolved. Against this backdrop, BMG's request for dismissal seeks to put RCN in an impossible position. If the Court grants BMG's motion and therefore precludes RCN from obtaining declaratory relief regarding its ongoing liability

1

associated with BMG's infringement notices, RCN's potential liability will continue to grow. *Then*, when BMG files suit, RCN will face tremendous liability that could have been avoided, *and* BMG will argue that the notices RCN was unable to challenge are evidence that RCN knew of or was willfully blind to alleged infringement on its network.  Additionally, BMG would argue, upon dismissal, that RCN's so-called "willful" conduct should prevent RCN from establishing that its policy for terminating repeat copyright infringers entitles it to the safe harbor protections of the Digital Millennium Copyright Act ("DMCA").  It is impossible to reconcile such a result with the purpose of the Declaratory Judgment Act: "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage has accrued."  *United States v. Doherty*, 786 F.2d 491, 499 (2d Cir. 1986).

BMG's alternative argument, that RCN fails to state claims for declaratory relief, is plainly meritless.  RCN alleges sufficient detailed facts which, taken as true, demonstrate that it cannot be held liable to BMG for contributory or vicarious copyright infringement.  For instance, RCN cannot be liable for secondary infringement given that it has no right or ability to control or prevent its subscribers' use of copyrighted material.  Moreover, BMG *admits* that RCN does not profit—and instead suffers huge losses—as a result of any infringement by its subscribers.  In view of these and other facts, RCN has clearly stated claims for a declaratory judgment of no contributory or vicarious copyright infringement.

The Court should, therefore, deny BMG's motion to dismiss.

## I.   THE COURT HAS, AND SHOULD EXERCISE, JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT

### A.   The Declaratory Judgment Act exists for precisely this type of case.

A short time before RCN filed this declaratory judgment action, BMG's litigation

counsel represented to RCN that BMG "has identified millions of instances of infringement involving thousands of BMG copyrighted works using the RCN system," and asserted that "RCN's knowledge and allowance of unchecked infringement to occur using its network makes it liable for secondary copyright infringement and actual or statutory damages as high as $150,000 per infringed work." Exhibit A to Declaratory of Richard L. Brophy (April 14, 2016 Letter from M. Allan to J. Kramp). In the same letter, BMG proposed that the parties resolve "this ongoing and damaging infringement" through "a settlement that would include a means of preventing or limiting future infringement and appropriate compensation to BMG." *Id.* In subsequent correspondence, BMG's litigation counsel accused RCN of failing to terminate subscribers in accordance with Section 512 of the DMCA, reiterated their position that RCN is liable to BMG for alleged past and continuing copyright infringement taking place on the RCN network, and pointedly referred to BMG's successes in copyright infringement litigation against another similarly-situated ISP, Cox Communications. Exhibit B to Declaration of Richard L. Brophy (May 25, 2016 Letter from M. Allan to R. Brophy).

These facts unquestionably establish "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc*, 549 U.S. 118, 127 (2007); *see also Sasson v. Hachette Filipacchi Presse*, No. 1:15-cv-194, 2016 WL 1599492, at *3 (S.D.N.Y. April 20, 2016) (recognizing that *MedImmune* "lowered the threshold in the Second Circuit for proving the existence of such controversies," by rejecting the requirement for the plaintiff to show "a real and reasonable apprehension of liability") (quotations & citations omitted). Specifically, the parties dispute the extent to which RCN, as an ISP, is and can be held liable to BMG for acts of copyright infringement committed by RCN's subscribers, consistent with the

DMCA and under common-law principles of contributory or vicarious copyright infringement. The substantial, immediate and concrete nature of this dispute is particularly apparent given the literally *millions* of instances of alleged infringement BMG claims to have identified over just the past few years, with RCN continuing to receive notices of such infringement from BMG at a rate of several hundred per day.  *See* Am. Compl., ¶¶ 3, 56-57, ECF No. 45.

Nevertheless, according to BMG, RCN has only two options, neither of which is tenable in light of the demands BMG makes on RCN: (1) accede to BMG's demands for an out-of-court settlement; or (2) do nothing, and allow damages to continue to accrue until BMG decides to file suit, at a time and place of its own choosing.  Thus, on the one hand, BMG is willing to settle its claims against RCN, but on the other hand, BMG contends that the very same claims are too speculative and hypothetical to be adjudicated in this Court.  The Declaratory Judgment Act exists in order to prevent this classic whipsaw:  "[T]he fundamental purpose of the DJA is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication *without waiting until his adversary should see fit to begin suit, after damage has accrued*."  *Doherty*, 786 F.2d at 498 (emphasis added); *see also Sasson*, 2016 WL 1599492, at *4 ("But 'simply holding litigation in abeyance' does not 'eliminate the case or controversy.' *The very purpose of the Declaratory Judgment Act is to provide a procedural means for a plaintiff to determine whether it is liable for its conduct before the defendant asserts its rights*.") (citations omitted) (emphasis added).

Through this declaratory action, RCN seeks to resolve BMG's allegations that RCN's *ongoing conduct*—its provision of internet services to alleged direct infringers of BMG's purported copyrights—makes it liable to BMG for secondary copyright infringement.  This is not an instance where the declaratory action concerns only past conduct, or only future behavior

4

which was purely hypothetical at the time of suit.  BMG does not cite, because it cannot, any authority holding that a claim addressing the disputed legality of ongoing conduct, as is the case here, is not justiciable under the Declaratory Judgment Act.

In light of BMG's daily and continuous transmittal of hundreds of copyright infringement notices to RCN—each referring to purported "ongoing and damaging infringement" on RCN's network—BMG's alleged damages continue to accrue.  BMG does not dispute this.  BMG therefore misses the mark in relying on authority rejecting declaratory jurisdiction because the claim at issue concerned *only* past conduct.  *See Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 426-27 (S.D.N.Y. 2002) (declaratory action seeking to establish federal law defense to defamation claim pending in foreign court); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Int'l Wire Group, Inc.*, No. 1:02-cv-10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003) ("There is no basis for declaratory relief where *only* past acts are involved.") (emphasis added).  And even if RCN *were* seeking a declaratory ruling regarding past conduct alone (it is not), courts in the Second Circuit have nevertheless exercised declaratory jurisdiction over such disputes.  *See N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 1:04-cv-9949, 2005 WL 926969, at *2 (S.D.N.Y. April 19, 2005) ("On the contrary, parties routinely seek a declaration that their prior actions were permissible.") (citing *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 558-62 (2d Cir. 1991) (affirming entry of declaratory judgment that certain conduct which occurred four years before the action was instituted did not violate securities laws)).

Leaving aside the issue of past conduct, declaratory jurisdiction is also available to address RCN's liability for future conduct—specifically, continuing to provide internet access to subscribers who BMG alleges are infringing BMG's copyrights.  *See, e.g.*, *John Wiley & Sons,*

*Inc. v. Visuals Unlimited, Inc.*, No. 1:11-cv-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively."). Courts routinely and consistently exercise declaratory jurisdiction for this purpose. *See Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 383 (S.D.N.Y. 2007) ("The threat of harm because of future statements that plaintiffs may make regarding Stoli's vodka is of sufficient immediacy to comply with the requirements articulated in *MedImmune*. . . . . As is clear from the *MedImmune* decision, future conduct may be sufficiently imminent to comprise an 'actual controversy.'"); *Venugopal v. Sharadha Terry Prods., Ltd.*, No. 1:07-cv-484, 2009 WL 1468462, at *4 (W.D.N.Y. May 22, 2009) ("Plaintiff need not risk suit for infringement by engaging in the planned commercial activity before he can obtain a declaration of his rights.") (citations omitted); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."). This is particularly true where, as here, BMG is expressly reserving the right to bring suit against RCN at some time in the future, regarding the precise conduct at issue in the Amended Complaint. *See Seidman v. Chobani, LLC*, No. 1:14-cv-4050, 2016 WL 1271066, at *5 (S.D.N.Y. Mar. 29, 2016) ("[I]t is not 'absolutely clear' that Plaintiffs will not make any claims or demands against Defendants in the future regarding the 'How Matters' mark, and therefore Defendants' counterclaims present an actual 'case or controversy' that provides an independent basis for the exercise of federal jurisdiction.").

In any event, because this case addresses RCN's liability for _ongoing_ conduct, there is no question that it presents a justiciable "case or controversy" under the Declaratory Judgment Act.

6

*See SanDisk*, 480 F.3d at 1381 ("[W]here a patentee asserts rights under a patent based on certain identified *ongoing or planned activity of another party*, and where that party contends that it has the right to engage in the accused activity without license, <u>an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.</u>") (emphasis added).

> **B.**     **RCN alleges numerous facts which support the exercise of declaratory jurisdiction.**

Contrary to BMG's claims, any declaratory judgment the Court might enter would not be a sweeping ruling immunizing any and all future conduct by RCN.  The Court would simply declare that certain specified conduct of RCN does not constitute copyright infringement.  If RCN were to engage in different conduct, this Court's declaration would not preclude BMG from seeking relief for conduct outside the scope of the judgment.  Moreover, BMG's argument would prevent any declaratory judgment action.   The fact that RCN's conduct could hypothetically change does not destroy declaratory jurisdiction.  If that were the case, declaratory jurisdiction would never be proper.

The proper question for this Court to evaluate on this motion is whether RCN's conduct, as alleged in its Amended Complaint, renders RCN liable to BMG for copyright infringement. In suggesting that the facts concerning such conduct are too hypothetical to be justiciable, BMG ignores the numerous allegations in RCN's Amended Complaint.  RCN contends that it cannot be held liable for secondary copyright infringement for a number of reasons which are in no way hypothetical.

For instance, as set forth in the Amended Complaint, RCN is not liable for *contributory* copyright infringement because RCN does not knowingly induce, cause, or materially contribute to any alleged infringement by its subscribers or other unauthorized users of its network.  *See*

*Liberty Media Holdings, LLC v. Tabora*, 2012 WL 2711381, No. 1:12-cv-2234, 2012 WL 2711381, at *2 (S.D.N.Y. July 9, 2012) ("[A] defendant may be liable for contributory copyright infringement if 'with knowledge of the infringing activity, the defendant 'induces, causes, or materially contributes to the infringing conduct of another.'") (citation omitted).  RCN's conduct does not meet this standard because, among other reasons:

- BMG cannot reliably identify instances of actual infringement on RCN's network, and RCN otherwise does not have knowledge of any alleged infringement on its network because it merely provides internet connectivity to its subscribers.  *E.g.*, Am. Compl., ¶¶ 39-50, 74-75, 79.

- RCN does not encourage or assist its customers in committing copyright infringement—indeed, BMG admits that RCN suffers losses as a result of subscriber copyright infringement.  *E.g.*, *id.*, ¶¶ 70-72, 83.

- RCN cannot monitor or prevent infringement in real time, distinguish between legitimate and potentially illegitimate uses of its network, or otherwise exercise control over its subscribers' use of copyrighted material.  *E.g.*, *id.*, ¶¶ 76, 78, 81-82.

- The internet access RCN provides is capable of substantial non-infringing uses, meaning that RCN cannot "materially contribute" to infringement by providing such access.  *Id.*, ¶ 80; *Liberty Media*, 2012 WL 2711381, at *2 ("To satisfy the 'materially contributes' requirement, Plaintiff must in this case show that Tabora . . . encouraged or assisted Whetstone's infringement, or provided machinery or goods that facilitate the infringement (except where the equipment is 'capable of substantial noninfringing uses,' which of course an Internet connection is).") (citations omitted).

None of these facts is hypothetical or otherwise requires speculation as to what RCN or BMG might do.

Likewise, RCN has alleged concrete facts demonstrating that it is not liable for vicarious copyright infringement, which "is premised wholly on direct financial benefit and the right and ability to control infringement."[1]  *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124,

---

[1] Under this standard, BMG's notices of alleged infringement are irrelevant to the issue of

156 (S.D.N.Y. 2009) (emphasis added).  Specifically:

- As noted, RCN does not obtain any direct financial benefit from infringement committed by its subscribers.  BMG acknowledges that RCN stands to lose millions of dollars from the alleged infringement on its network, due to lost revenue from cable TV and on-demand video content as well as the burden of additional network traffic. *E.g.*, Am. Compl., ¶¶ 70-72, 102-104.

- RCN does not have the ability to control infringement because, *inter alia*, it cannot monitor or prevent infringement in real time, distinguish between legitimate and potentially illegitimate uses of its network, or otherwise exercise control over its subscribers' use of copyrighted material.  *E.g.*, *id.*, ¶¶ 93-96. Additionally, there is no viable way for RCN to attempt to monitor subscriber use of the internet for the purpose of curtailing allegedly infringing activity while maintaining the availability of its internet services for non-infringing activity. *Id.*, ¶ 97.

- Pursuant to 17 U.S.C. § 512(m), RCN has no obligation to monitor its service or affirmatively seek facts indicating infringing activity. *Id.*, ¶ 98.

- Because of the existence of other ISPs in the geographic markets in which RCN operates, any steps RCN might take to curtail infringing activity on its network would be ineffective or, at most, would have an indirect effect on the total amount of infringing activity. *Id.*, ¶¶ 99-101.

As with RCN's allegations regarding contributory copyright infringement, these factual allegations are plainly appropriate for Court resolution through a litigated declaratory judgment.

Additionally, with respect to *both* contributory and vicarious infringement, RCN alleges that it is protected by the DMCA safe harbor which shields from liability those ISPs merely providing internet access, provided they implement a policy for terminating repeat infringers in appropriate circumstances.  *See* Am. Compl., ¶¶ 90, 110; 17 U.S.C. § 512(a), (i).  BMG is of course correct that "there is no factual record on which to assess" the applicability of the safe harbor (ECF No. 62 at 10)—the development of that record is a matter for discovery.  BMG offers no authority for the suggestion that RCN is obligated to plead the complete factual basis

_____

vicarious infringement, because "it does not include an element of knowledge or intent on the part of the vicarious infringer." *Arista*, 633 F. Supp. 2d at 156.

for resolving the DMCA safe harbor issue in order for the Court to have declaratory jurisdiction. *See* ECF No. 62 at 10.  To the extent BMG wishes to maintain that RCN's policy was or is inadequate, those are arguments that BMG must develop in discovery.

The *facts* regarding RCN's DMCA policy, now and in the past, are definite and ascertainable.  Thus, RCN's claims plainly satisfy the declaratory jurisdiction standard on which BMG relies—the existence of "a dispute which calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of *present rights upon established facts*."  *Mears v. Montgomery*, No. 1:02-cv-407, 2013 WL 69221, at *2 (S.D.N.Y. Jan. 4, 2013) (emphasis added). RCN seeks a declaration regarding the extent to which its DMCA policy entitles it to DMCA safe harbor protection, and BMG offers no authority providing that such relief is unavailable under the Declaratory Judgment Act.

For these reasons, this case is clearly distinguishable from the pre-*MedImmune* district court opinion on which BMG relies, *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265 (S.D. Cal. 2007).  In *Veoh,* the court found that the controversy was not "adequately defined" where "Plaintiff's Complaint generally discusse[d] their video hosting operation, that Defendant owns unspecified copyrights, and that Defendant has made unspecified threats of copyright infringement litigation," from which the plaintiff sought "a far-reaching declaratory judgment that it is not liable for infringing *any* of Defendant's rights and is entitled to the Section 512(c) safe harbor."  *Id.* at 1269.  Here, in contrast, these very same facts are well-defined and/or readily ascertainable—from the nature of RCN's business, to specific copyrights BMG has accused RCN of infringing, to BMG's express threats of RCN's liability of up to $150,000 per infringed work, to the substance and implementation of RCN's DMCA policy for identifying and terminating repeat infringers.

RCN is not seeking any far-reaching declaration or a "blanket validation of its business model," but rather a declaration confined to the facts and evidence presented in this case, regarding whether or to what extent RCN is liable to BMG for secondary copyright infringement. These facts are concrete and ascertainable, and they therefore present a "case or controversy" subject to the Court's jurisdiction.[2]

### C.   BMG offers no colorable basis for discretionary dismissal.

This case does not present a substantial question regarding discretionary dismissal. The Second Circuit has held that "a court *must* entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. If either prong is met, the action must be entertained." *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (emphasis added). Here, both of these prongs are satisfied.

A declaratory judgment will serve a useful purpose *and* afford relief from uncertainty by resolving the copyright infringement allegations BMG has made against RCN, which concern RCN's ongoing conduct. *See, e.g.*, Am. Compl., ¶¶ 51-69. Because there is no other pending litigation between the parties, if this action is dismissed, then BMG's allegations will remain unresolved, and RCN's alleged exposure will continue to grow. *See Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 124 (S.D.N.Y. 2016) (refusing discretionary

---

[2] As BMG notes, the *Veoh* court asked the question: "given the highly factual and time-sensitive findings required to satisfy [the safe harbor], would today's declaratory relief essentially give Plaintiff a 'free pass' to infringe rights in the future?" 522 F. Supp. 2d at 1270 n.3. The answer to that question is a definitive <u>no</u>, because any declaratory judgment would be tied to RCN's implementation of a specific DMCA policy. If RCN were to change its policy or cease following it, BMG could argue that RCN is longer be entitled to the protection of any declaratory judgment the Court might issue regarding that policy.

dismissal given that "there is no other action currently pending to raise concerns that the Plaintiffs are seeking to win the race to res judicata"); *see also id.* at 122 ("When considering . . . whether the judgment will serve a useful purpose in clarifying or settling legal issues involved and offer relief from uncertainty—this Court has previously declined to exercise jurisdiction over a declaratory judgment action that duplicates an available coercive action."); *U.S. Bank Nat'l Ass'n ex rel. Lima Acquisition LP v. PHL Variable Ins. Co.*, No. 1:12-cv-6811, 2014 WL 998358, at *9 (S.D.N.Y. Mar. 14, 2014) ("The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'") (citation omitted).   A declaratory judgment in this case would state with specificity and certainty whether and to what extent RCN may be liable to BMG, which could—and in all likelihood would—resolve the parties' dispute.

Nevertheless, BMG suggests that "[t]o the extent that there is a dispute between the parties, a suit for declaratory relief is not the proper vehicle to resolve it."  BMG then goes on to list various factual issues that the Court or a jury would have to consider in order to resolve the parties' claims.   ECF No. 62 at 12-13.   *Of course* litigation would require consideration of certain issues by a factfinder.   But that alone does not make discretionary dismissal appropriate on a Rule 12 motion.   Moreover, BMG wrongly suggests that the factfinder would need to "engage in fact-intensive inquiries regarding RCN's knowledge of and response to specific instances of copyright infringement."  ECF No. 62 at 12.   In other words, BMG claims that each of the millions of instances of alleged copyright infringement would need to be litigated separately.   BMG offers no authority for that proposition, which is itself impossible to reconcile with RCN's allegations demonstrating that it is not liable irrespective of how individual copyright infringement notices were or are handled.

BMG's claims about forum-shopping and preempting good-faith negotiations—"procedural fencing"—are nothing more than bluster. Again, BMG did not file and has not filed suit against RCN. This declaratory action is RCN's only option for resolving the parties' dispute, short of entering into an out-of-court settlement with BMG. Faced with BMG's allegations, RCN is entitled to vindicate its rights through this declaratory action—it is not required to simply accede to BMG's demands. In short, RCN had no other reasonable option than to file this action. *See also Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 360 (2d Cir. 2003) (noting that courts have considered, in exercising their discretion under the Declaratory Judgment Act, "whether there is a better or more effective remedy").

Finally, BMG incorrectly claims that discretionary dismissal is warranted because RCN's Amended Complaint "anticipates defenses to liability." As set forth in *Veoh*, on which BMG relies, "numerous courts have refused to grant declaratory relief to a party who has come to court *only* to assert an anticipatory defense." 522 F. Supp. 2d at 1271 (emphasis added). But that principle is inapplicable here because RCN is not only claiming the protection of the DMCA safe harbor; RCN *also* alleges that it is not liable for contributory or vicarious copyright infringement under common-law principles. Am. Compl., ¶¶ 73-111; *see also John Wiley*, 2011 WL 5245192, at *7 (dismissing declaratory action regarding copyright infringement where the plaintiff invoked defenses such as the statute of limitations and lack of copyright ownership, and *did not seek a declaration of non-infringement*). BMG has not offered any authority that would support discretionary dismissal in these circumstances.

## II.   RCN HAS STATED CLAIMS FOR A DECLARATORY JUDGMENT OF NO SECONDARY COPYRIGHT INFRINGEMENT

BMG cannot sustain its argument that RCN offers nothing more than a "formulaic recitation of the elements" of its claims. RCN has done far more than is necessary to state a

plausible claim for declaratory relief.  RCN's Amended Complaint contains detailed factual allegations which establish that RCN is not directly or secondarily liable for copyright infringement—allegations which must be accepted as true at this stage, with all reasonable inferences drawn in RCN's favor.  *See, e.g. TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016).

### A.    RCN states a claim for a declaratory judgment of no contributory copyright infringement.[3]

Contributory copyright infringement exists when a party knowingly engages in personal conduct that encourages or assists in the infringement.  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117-18 (2d Cir. 2010).   Thus, to establish liability for contributory copyright infringement, BMG must prove that RCN: (1) has knowledge of the infringing activity; *and* (2) induces, causes, or materially contributes to the infringing conduct of its subscribers.  *Id*.  RCN alleges a host of facts which establish that RCN's conduct does not meet either element of this standard.

### i.   RCN lacks knowledge of specific acts of infringement.

In order to have "knowledge of the infringing activity," the alleged infringer must have "actual or constructive knowledge of specific and identifiable infringements."  *Wolk v. Kodak Imaging Network, Inc*., 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012) (citation omitted).   "[A] general awareness that there are infringements" is not sufficient to establish this knowledge.  *Id*.

RCN alleges that it does not possess the requisite knowledge for a number of separate and distinct reasons.  First, BMG's copyright infringement notices do not reliably correspond to actual instances of infringement, and so they cannot confer knowledge on RCN.  Am. Compl., ¶¶

---

[3] BMG does not contend that RCN failed to adequately allege BMG's ownership of the copyrights at issue, or that RCN failed to adequately allege that there are no underlying predicate instances of direct copyright infringement necessary to support a secondary infringement claim. *See* Am. Compl., ¶ 74.

36-50, 74.  This is the case because, among other reasons, the Rightscorp system that BMG uses sends notification letters upon detecting a potentially infinitesimally small portion of an allegedly copyrighted work, without any means to determine if the subscriber possesses the work at all, or the entire work, or has actually *illegally* shared that work.  *Id.*, ¶¶ 41-43.  These notices also fail to confer knowledge of infringement because they do not even identify any infringed copyright; instead, they only provide the name of the file that allegedly exists on a subscriber's computer. *Id.*, ¶ 46.  Additionally, because the notification letters are not digitally signed, RCN has no way of knowing if they are legitimate, and in fact, third parties routinely send illegitimate notices masquerading as Rightscorp, BMG, and other copyright owners.  *Id.*, ¶ 48.

Separate and apart from those issues, BMG's notices are also legally deficient as a matter of law due to RCN's status as a conduit ISP—that is, an ISP which merely provides internet access.  Because of its status as a conduit, RCN is not bound by the notification process set forth in 17 U.S.C. § 512(c)(3).  *See Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1236 (D.C. Cir. 2003) ("[A]ny notice to an ISP concerning its activity as a mere conduit does not satisfy the condition of § 512(c)(3)(A)(iii) and is therefore ineffective."). As a result, notices under that subsection cannot create actual or constructive knowledge of infringing activity for a conduit ISP like RCN.  *See In re Charter Commc'ns*, 393 F.3d 771, 776 (8th Cir. 2005) (The absence of the notification provision "makes sense where an ISP merely acts as a conduit for infringing material—rather than directly storing, caching, or linking to infringing material—because the ISP has no ability to remove the infringing material from its system or disable access to the infringing material").

In fact, the notification letter described in subsection (c)(3) of the DMCA is a mechanism designed to notify only those service providers who—unlike RCN—have control to "remove, or

disable access to, the material" at issue.   17 U.S.C. § 512(c)(1)(A)(iii).   Conduit service providers like RCN have no such control, and the statute does not purport to impose on conduit service providers the obligations set forth in that section.   Therefore, Rightscorp's notices of infringement are not sufficient to constitute evidence of infringement to RCN and cannot impute knowledge to RCN.

> ii.  RCN has not caused, induced, or materially
> contributed to any alleged direct infringement.

Separate and apart from its lack of knowledge of infringing activity, RCN has stated a claim for a declaratory judgment of no contributory infringement because its allegations demonstrate that it did not induce, cause, or materially contribute to the infringing conduct of another.  *See, e.g.*, *Arista Records*, 604 F.3d at 117.  Because of this element, mere knowledge of infringement is not enough to establish liability.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).   Instead, the copyright owner must prove that the accused infringer acted "with the object of promoting [the use of its product or service] to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement."  *Id.* at 936-37.

RCN expressly alleges that it does not authorize, direct, or encourage subscribers to engage in direct infringement, does not take any affirmative steps to foster such infringement, and does not profit from such infringement.  *E.g.*, Am. Compl., ¶ 83; *see also id.*, ¶ 7 ("RCN does not sanction, approve or profit from the use of BitTorrent or other applications that enable copyright infringement.").  RCN does nothing more than provide internet connectivity.  *Id.*, ¶ 75. Indeed, as a mere conduit ISP, RCN has no ability to control the activity of its subscribers.  *Id.*, ¶ 78; *see also In re Charter*, 393 F.3d at 776 ("[W]here an ISP merely acts as a conduit for infringing material . . . the ISP has no ability to remove the infringing material from its system or

disable access to the infringing material.").  Moreover, RCN also has no legal obligation under the DMCA to police its subscribers' activity.  17 U.S.C. § 512(m) ("a service provider" is under no obligation to "monitor[] its service or affirmatively seek[] facts indicating infringing activity").  For at least these reasons, RCN states a claim that it is not liable for contributory copyright infringement.

BMG incorrectly suggests that RCN is contributing to copyright infringement as a matter of law because there is no dispute that RCN provides internet access to alleged direct infringers.  That notion is inconsistent with the law.  "Participation sufficient to establish a claim of contributory infringement may not consist of merely providing the 'means to accomplish an infringing activity.'"  *Livnat v. Lavi*, No. 1:96-cv-4967, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (quoting *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 n.17 (1984)).  Instead, "[p]articipation in the infringement must be substantial . . . [and] [t]he authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer."  *Id.* at *3 (citation omitted).  It is readily apparent from RCN's allegations that RCN does not act in concert with any alleged direct infringers.  *See, e.g.*, Am. Compl., ¶ 77 ("RCN merely provides Internet connectivity to its subscribers, and lacks information about the contents and operation of its subscribers' computers or private networks, RCN does not have knowledge that any infringing material exists on its subscribers' computers or networks and RCN does not have knowledge that any of its subscribers are running software that would make copyrighted works available for illegal download by others.").  Thus, RCN more than sufficiently alleges that it does not cause or induce any direct copyright infringement.

RCN has also alleged that the internet access it provides has substantial non-infringing

uses, which establishes that RCN does not "materially contribute" to any alleged infringement. Under the "Sony-Betamax rule," "a defendant who distributes a product that materially contributes to copyright infringement *will not* be liable for contributory infringement if the product also is 'widely used for legitimate, unobjectionable purposes' or is 'merely capable of substantial noninfringing use.'" *Arista Records*, 784 F. Supp. 2d at 432 (emphasis in original) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 442 (1984)); *see also, e.g.*, *BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7 (S.D.N.Y. July 15, 2016).   RCN expressly alleges that its services have substantial non-infringing uses, which should be an obvious conclusion.   Am. Compl., ¶ 80 ("These non-infringing uses include the transmission of email, video conferencing, voice-over-IP telephony, web browsing, and the download and/or streaming of properly-licensed copyrighted works."); *Liberty Media*, 2012 WL 2711381, at *2 ("To satisfy the 'materially contributes' requirement, Plaintiff must in this case show that Tabora . . . encouraged or assisted Whetstone's infringement, or provided machinery or goods that facilitate the infringement (*except where the equipment is 'capable of substantial noninfringing uses,' which of course an Internet connection is*).") (emphasis added) (citations omitted).   As such, RCN states a claim that it has not materially contributed to any alleged direct infringement.

### B.   RCN sufficiently pleads a claim for declaratory judgment of no vicarious copyright infringement.

Vicarious copyright infringement exists when a party profits from direct infringement "while declining to exercise the right to stop or limit it."   *Blank Prods., Inc. v. Warner/Chappell Music, Inc.*, 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013) (citations omitted).   Specifically, the copyright owner must prove that the alleged infringer: (1) had the right and ability to supervise the infringing activity; and (2) has a direct financial interest in such activities.   *See BWP*, 2016

WL 3926450, at *8. As with the two-prong contributory infringement standard, RCN has alleged facts demonstrating that BMG cannot satisfy either element of this standard.

      i.    <u>RCN cannot supervise or control the alleged<br>infringing activity.</u>

The first element of vicarious infringement requires proof that the "defendant had the ability to supervise or control the third parties' infringing activity and failed to do so." *BWP*, 2016 WL 3926450, at *8. "A party has control where it has 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'" *Blank Prods., Inc. v. Warner/Chappell Music, Inc.,* 2013 WL 32806, at *3 (S.D.N.Y. Jan. 3, 2013) (*citing Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1173 (9th Cir. 2007)). As discussed above, as a conduit ISP, RCN has no ability to supervise or control the activity of its subscribers, and no ability to limit the accused infringing activity. *See, e.g.*, Am. Compl., ¶¶ 6, 95, 109. As such, RCN plainly alleges facts which demonstrate that it has cannot supervise or control the alleged infringing activity, and therefore has stated a claim for no vicarious copyright infringement.

      ii.    <u>RCN does not have a direct financial interest in<br>infringing activity.</u>

The second element of vicarious infringement requires a causal relationship between the infringing activity and financial benefit to the vicarious infringer. *See, e.g.*, *Arista Records*, 784 F. Supp. 2d at 435; *see also Blank Prods.*, 2013 WL 32806, at *4 ("Direct financial benefit exists where there is a causal relationship between the infringing activity and any financial benefit a defendant reaps.") (citation omitted). That is, in order to be liable, RCN must have "a direct financial interest in [the infringing] activities" of its subscribers. *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

Here, RCN expressly alleges that it not only does not financially benefit from any of the alleged infringing activity, but that if anything, it is financially harmed by such activity. Am.

Compl., ¶ 102.  In fact, Rightscorp, BMG's agent, acknowledges that RCN does not financially benefit from the infringement committed by its subscribers, and instead suffers losses.  *Id.*, ¶ 71 ("Many of those millions of pirated movies and TV shows are not just lost revenue to our clients but to RCN as well."), ¶ 72 ("It is costing RCN a lot of capital expenditure to service all of the infringement occurring on your network.").

These allegations are more than sufficient to establish that RCN has no direct financial interest in the alleged copyright infringement committed by its subscribers.  Thus, RCN states a claim for a declaratory judgment of no vicarious copyright infringement.

## CONCLUSION

For the foregoing reasons, the Court should deny BMG's motion to dismiss.

Dated:  March 2, 2016

ARMSTRONG TEASDALE LLP


By:   /s/ Richard L. Brophy


Richard L. Brophy
(admitted *pro hac vice*)
David W. Braswell (Bar No. 4632584)
Zachary C. Howenstine
(admitted *pro hac vice*)
Margaret R. Szewczyk
(admitted *pro hac vice*)
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
dbraswell@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

Charles W. Steese
(admitted *pro hac vice*)
4643 Ulster Street, Suite 800
Denver, CO 80237
Telephone: 720-200-0677
Fax: 720-200-0679
csteese@armstrongteasdale.com

Edward F. Maluf
SEYFARTH SHAW LLP
620 Eighth Avenue
New York NY 10018
Telephone: 212-218-5500
Fax: 212-218-5526
emaluf@seyfarth.com

*Attorneys for Plaintiffs*